F I L E D
Clerk
District Court

OCT 27 2025

for the Northern Mariana Islands
By_____ *JP*
(Deputy Clerk)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| MARIA VERNA LIZA SABLAN, | Case No. 1:22-cv-00013 |
| Plaintiff, | |
| v. | **DECISION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| SABLAN CORPORATION, SABLAN ENTERPRISES, INC., SABLAN CONSTRUCTION CO., LTD., and CONRAD MUÑA SABLAN, | |
| Defendants. | |
| CONRAD MUÑA SABLAN, | |
| Counterclaimant, | |
| v. | |
| MARIA VERNA LIZA SABLAN, | |
| Counter-defendant. | |

On October 31, 2024, Plaintiff Maria Verna Liza Sablan ("Maria") filed her First Amended Complaint in this action against her ex-husband—Conrad Muña Sablan ("Conrad")—and three Defendant Corporations alleging violations of her rights based upon the Commonwealth of the Northern Mariana Islands ("CNMI") Superior Court's division of Maria and Conrad's marital property in their divorce action. (FAC, ECF No. 33.) Now before the Court is Maria's Motion for Summary Judgment against Defendants Conrad, Sablan Corporation ("SC"), Sablan Enterprises, Inc. and Sablan Construction Co., Ltd. ("SCCL"), and Maria's Motion for Judgment on the Pleadings as to Conrad's

1    counterclaim. (Maria's MSJ and MJP, ECF No. 63.) Conrad, SC, and SCCL opposed the Motions

2    (Conrad et al. Opp'n, ECF No. 70[1]), to which Maria replied. (Maria's Reply, ECF No. 75.)

3        Maria and Sablan Enterprises, Inc. reached a settlement agreement and withdrew their Cross-

4    Motions for Summary Judgment against one another the day before the motions hearing. (Not. of

5    Settlement, ECF No. 82.) At the hearing, Maria and Sablan Enterprises read the terms of their

6    settlement agreement into the record, and the Court heard counsel's arguments as to the remaining

7    causes of action for which Maria seeks summary judgment: 1) declaratory judgment and injunctive

8    relief against Defendant Corporations Sablan Corporation and Sablan Construction Co., Ltd. for

9    recognition as a shareholder (*see* FAC 5); 2) conversion against Conrad (*see id.*); and 3) unjust

10   enrichment against Conrad (*see id.* at 7). (Mins., ECF No. 83.) The Court also heard arguments

11   regarding Maria's Motion for Judgment on the Pleadings as to Conrad's counterclaim for unjust

12   enrichment based upon Maria's failure to pay her share of marital debts. (*Id.*) Having considered the

13   briefs, the applicable law, and counsel's arguments, the Court now GRANTS IN PART Maria's

14   Motion for Summary Judgment on her claims, and DENIES Maria's Motion for Judgment on the

15   Pleadings on Conrad's counterclaim for the reasons detailed herein.

16

17

18

19

20

---

21   [1] Before Conrad et al. filed their Opposition, Conrad filed a notice of his appeal of the CNMI Superior Court's
     divorce case to the CNMI Supreme Court. (ECF Nos. 69–69-1.) Conrad filed his appeal on August 15, 2025,
22   challenging the Honorable Judge Teresa Kim-Tenorio's order in the divorce action which held that the 2008
     Findings of Fact and Conclusions of Law was a final judgment under the Northern Mariana Islands ("NMI")
23   Rules of Civil Procedure, or in the alternative, that it became a final judgment in 2010 after a change to the
     NMI Court rules. (ECF Nos. 69–3–69-4.)
24

I.    **BACKGROUND**

In the divorce action *Sablan v. Sablan*, FCD-DI Civil Action No. 03-0378 ("Divorce Action"), the Commonwealth Superior Court entered a decree of absolute divorce in November 2004, granting Conrad's petition for divorce from Maria. (Divorce Decree 1, ECF No. 75-1; D&O 2, ECF No. 24.) In June 2008, the Superior Court entered its Findings of Fact and Conclusions of Law ("FFCL"), which purportedly resolved issues related to "custody, property distribution and division of marital debts" in Maria and Conrad's divorce. (FFCL 1, ECF No. 33-1.) In relevant part, the FFCL found that all the stocks owned by Conrad in the three Defendant Corporations were marital property and divided them equally between Conrad and Maria. (*Id.* at 3–4.) Further, the Superior Court's FFCL identified $428,010.90 worth of marital debt, splitting the debts equally between Conrad and Maria. (*Id.* at 5.)

Fourteen years after the Superior Court decided the distribution of marital assets, Maria initiated this civil action. (*See* Compl., ECF No. 1.) Defendants moved to dismiss the Complaint, arguing that the FFCL does not constitute a final judgment in the Divorce Action, abstention is appropriate, and the Defendant Corporations did not receive due process because Maria brought this instant action before providing any notice of the FFCL to them. (*See* D&O 6–15.) The Court denied the Motion as to the causes of action against Conrad for conversion and unjust enrichment, finding that the FFCL constitutes a final order and that abstention was inappropriate.[2] (*Id.* at 5.) However, the Court granted the Motion to Dismiss all claims against the Defendant Corporations, finding there were

---

[2] The Court did dismiss the Complaint's cause of action for conspiracy against Conrad because it was unsupported by any factual allegations. (FAC 15.)

insufficient facts to support that the Defendant Corporations had received any notice of the FFCL's division of stocks or that the Defendant Corporations had any duty to investigate Maria's stock ownership. (*Id.* at 14–15.)

After the issuance of the Decision and Order, the Court denied Maria's Motion for Reconsideration of its dismissal of her claims against the Defendant Corporations. (Mins., ECF No. 32.) Maria subsequently filed her First Amended Complaint, and Conrad filed a counterclaim against Maria (Conrad's Answer 6, ECF No. 38). Defendants then moved for Fed. R. Civ. P. 60(b) relief from the Court's Decision and Order and its findings that the FFCL constituted a final order and that abstention was inappropriate; the Court denied the Motion. (Mins., ECF No. 56; Transcript, ECF No. 57.) As of the date of the motion hearing, Maria has not tendered any written demand other than this lawsuit addressed directly to the Defendant Corporations demanding to be recognized as a shareholder pursuant to the FFCL.

## II.    LEGAL STANDARDS

### A.    Summary Judgment

The court shall grant summary judgment when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant must support their position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse

party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000) (internal citations omitted). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). "An issue is genuine if a reasonable trier of fact could find in favor of the nonmoving party." *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A mere "scintilla of evidence" is insufficient. *Id.* (citing *Anderson*, 477 U.S. at 252). A fact is "material" if it could affect the outcome of the case. *Id.* (citing *Anderson*, 477 U.S. at 248). The court views the evidence in the light most favorable to the non-moving party and draws "all justifiable inferences" in that party's favor. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). However, conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (internal citation omitted).

**B.  Judgment on the Pleadings**

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Because a motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim, the same standard of review applies to both motions. *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).

"Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 979 (9th Cir. 1999)). The court "must accept all factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party." *Id.* (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)). To survive a motion for judgment on the pleadings, a complaint must contain sufficient factual matter so as to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must present "more than a sheer possibility of misconduct." *Id.*

**III.  DISCUSSION**

With Maria and Sablan Enterprises having settled their claims, the Court now addresses the remaining causes of action against Conrad, Sablan Corporation, and Sablan Construction Co., Ltd. for which Maria seeks summary judgment. For the following reasons, the Court 1) grants Maria's Motion as to the first cause of action for declaratory and injunctive relief against Defendants Sablan

Corporation and Sablan Construction Co., Ltd. for shareholder recognition; 2) denies Maria's Motion as to the second cause of action for conversion of shares against Conrad; and 3) grants Maria's Motion as to the sixth cause of action for unjust enrichment against Conrad with respect to liability only for the profits and benefits derived from Maria's shares that he received. (*See* Maria's MSJ and MJP 1; FAC 5–8.) As for Conrad's counterclaim for unjust enrichment against Maria for her failure to pay her share of the marital debt, the Court denies Maria's Motion for Judgment on the Pleadings. The Court addresses each of these claims in turn.

**A. Maria Is Entitled to Recognition as a Shareholder of Sablan Corporation and Sablan Construction Co., Ltd Based on the Initiation of this Action, Not the Issuance of the FFCL.**

In the FAC's first cause of action, Maria alleges that she "is entitled to a declaratory judgment, declaring that she is a shareholder of the Defendant Corporations . . . and that she holds shares in at least the amounts provided by the Superior Court in its Order[3] . . . ." (FAC 5.) Further, the FAC alleges that Maria "is entitled to a mandatory injunction, commanding Defendant Corporations . . . to recognize Plaintiff as a shareholder . . . and to provide her henceforward with all the rights, notices and funds to which such a shareholder is entitled." (*Id.*)

Maria moves for summary judgment on this cause of action, arguing that she "became a shareholder of the three corporate Defendants upon the property division in her divorce from Defendant Conrad[,]" and as this Court already recognized in its prior Decision and Order on

---

[3] The FAC and FFCL enumerate Maria's entitlement to shares as "12,532 shares of Defendant Sablan Corporation, 750 shares of Defendant Sablan Enterprises, Inc., and 1563 shares of Defendant Sablan Construction Co., Ltd." (FAC 5; FFCL 3–4.)

Defendant's Motion to Dismiss when it noted that "the Superior Court has already [declared Maria to be owner of the corporate shares] in its FFCL." (Maria's MSJ and MJP 1–2.) In opposition, Defendant Corporations SC and SCCL argue that Maria is barred from shareholder recognition because she has not taken the requisite steps under the corporate bylaws. (Conrad et al. Opp'n 2.) In reply and relying on case law from other states, Maria argues that the corporations' bylaws regarding shareholder recognition by their own terms govern "except as expressly provided by the laws of the place of incorporation," and the FFCL outlining Maria's shareholder rights constitutes CNMI law. (Maria's Reply 4–5.) Further, Maria argues that the corporations' bylaws regarding "transfer restrictions" do not apply to "transfers by operation of law[,]" which include "transfers by court order at dissolution of marriage . . . ." (*Id.* at 2–4.) The Court grants Maria's Motion for Summary Judgment on this cause of action, finding that Maria is entitled to recognition as a shareholder of SC and SCCL based solely on the initiation of this action, and that Maria has failed to demonstrate she is entitled to shareholder recognition as of any earlier date.

        **1.**  **The Bylaws' Registration Requirement Protects the Corporations from Recognizing Maria as a Shareholder Until She Presents Herself for Registration or Secures a Court Order Requiring the Corporations to Register Her.**

Article IX, § 5 of the corporations' bylaws outline each corporation's right to rely on "its books" in recognizing shareholders:

> The corporation shall be entitled to recognize the exclusive right of a person registered on its books as the owner of shares to receive dividends, and to vote as owner. Registered shareholders only shall be entitled to be treated by the corporation as the holders in fact of the stock standing in their respective names. The corporation shall

not be bound[4] to recognize any equitable or other claim to[5] or interest in[6] any share on the part of any other person, whether or not it shall have express or other notice therefore[7], except as expressly provided by the laws of the state[8] of incorporation.

(SC Bylaws 3, ECF No. 70-3; SCCL Bylaws 2–3, ECF No. 70-4.)

Maria recognizes that the registration requirement in the bylaws protects, "at most," only SC and SCCL, not Conrad himself. (Maria's Reply 4.) However, she argues that not even SC and SCCL are protected in this case because the registration requirement in the bylaws applies only "except as expressly provided by the laws of the state of incorporation," and the FFCL constitutes such a law. (*Id.* at 5.)

### a. Legal Standard

Requiring registration of transfers of shares on the books of a corporation protects the corporation, "so that it may have the means of knowing at any time who . . . its shareholders are, and as such entitled to receive dividends, vote at corporate meetings, and otherwise participate in the management of the corporation . . . ." *See* 12 Fletcher Cyclopedia of the Law of Corporations § 5489 (updated 2025) (collecting cases).[9] "Although a transfer of stock between individuals must be registered on the corporation's books to receive recognition by the corporation, an unregistered

---

[4] SCCL's bylaws use the word "found" rather than "bound."
[5] SCCL's bylaws insert a comma here.
[6] SCCL's bylaws insert a comma here.
[7] SCCL's bylaws spell the word as "therefor."
[8] SCCL's bylaws use the word "place" rather than "state."
[9] By Commonwealth statute, "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute and, to the extent not so expressed as generally understood and applied in the United States, shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary . . . ." 7 CMC § 3401.

transfer is nevertheless binding between the parties, with equitable title passing to the transferee." *Id.* § 5496 (collecting cases). "This rule applies even where the charter or bylaws provide that an effective transfer of stock requires a transfer on the corporate books, since such a provision is solely for the protection of the corporation and hence irrelevant to issues between the transferor and transferee." *Id.* (collecting cases).

### a. Analysis

Assuming that the FFCL constitutes a law of the Commonwealth so as to fall within the Defendant Corporations' bylaws' exception to the registration requirement, the FFCL merely recognized the distribution of marital property—the corporate shares—between Conrad and Maria. (FFCL 3–4.) The FFCL did not order Conrad or the Defendant Corporations to register Maria on the corporations' books, nor did it even formally declare Maria to be a shareholder of the corporations. The FFCL only decided the "property distribution" between Conrad and Maria, ultimately dividing the corporate stocks owned by Conrad equally between the two as marital property (*Id.* at 1, 3). "The [Superior] Court retain[ed] jurisdiction of th[e] matter for the entry of such further orders as it may deem fair and necessary." (*Id.* at 6.)

Based on the FFCL's judicial partition, Maria could have at any time after the FFCL's issuance sought recognition as a shareholder by presenting herself for registration on the books. *See e.g.*, *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 196 (Tex. Civ. App. 1975) ("Subsequent to the entry of the divorce decree, Mrs. Earthman and her attorneys sought to have the stock which had been awarded to her transferred into her name on the corporate records of the three corporations."). In the alternative, Maria also could have sought a court order—from the family court judge who distributed

the shares—compelling the corporations to register her ownership of shares on their books and to recognize her as a shareholder. *See e.g.*, *Pollock v. Pollock Eng'g Co., Inc.*, 365 So. 2d 1186, 1188 (La. Ct. App. 1978) (after judicial partition, corporation and officers could be compelled by mandamus to recognize shareholder and issue certificate); *Earthman*, 526 S.W.2d at 196 (petitioner alleged that corporations refused to transfer stock that had been awarded to her under the decree, requesting that the court declare her rights and order delivery of certificates). It is undisputed that Maria did not pursue either of these avenues (*see* Conrad et al. Opp'n 4; Palacios Decl. 2, ECF No. 70-2), and thus under the corporations' bylaws and principles of corporate law, it would be improper for SC and SCCL to recognize her as a shareholder as of the date of the FFCL in 2008 or any time before the initiation of this civil action. *See id.* at 1189. However, the Court at this time grants Maria's Motion for Summary Judgment on her first cause of action, finding she is entitled to declaratory and injunctive relief against SC and SCCL to formally recognize her as a shareholder henceforward based on the FFCL.

### 2. The Bylaws' Procedural Requirements for Effectuating Valid Transfers Recognized by the Corporations Apply to Transfers by Operation of Law and Are Not "Transfer Restrictions."

Article IX, § 4 of SC and SCCL's bylaws discuss the transfer of stock in the corporations:

Shares of the corporation may be transferred by endorsement by the signature of the owner, his agent or attorney or legal representatives, and the delivery of the certificate; but such transfer is not valid except as to the parties thereto, until the same is so entered upon the books of the corporation as to show the names of the parties by whom and to whom transferred, the number of certificates, and the number or[10] designation of shares and the date[11] of transfer, and until the old certificates are surrendered and cancelled.

---

[10] SCCL's bylaws use the conjunction "or" rather than the conjunction "and."
[11] SCCL's bylaws use the word "day" rather than "date."

(SC's Bylaws 2–3; SCCL's Bylaws 2.)

Maria characterizes Article IX, § 4 of the corporations' bylaws—which provide that transfers are invalid "except as to the parties thereto" until the transfer is entered upon the books of the corporations—as a "transfer restriction" which does not apply to "transfers by operation of law." (Maria's Reply 2–3.) Maria argues that "the transfer restriction at Section 4 of both corporations' by-laws applies on its face only to transfers 'by endorsement by the signature of the owner, his agent or attorney or legal representatives, and the delivery of the certificate.'" (*Id.* at 2 (quoting the bylaws).)

### a. Legal Standard

"Corporate stock is generally subject to division in an action for divorce or dissolution of marriage." 11 Fletcher Cyclopedia of the Law of Corporations § 5102 (collecting cases). Under Commonwealth law, corporate bylaws "may impose restrictions on the transfer or registration of transfer of shares of the corporation." 4 CMC § 4358. However, "[a] restrictive stock transfer agreement is not binding on a court-ordered interspousal transfer pursuant to a divorce settlement." 11 Fletcher Cyclopedia of the Law of Corporations § 5102 (collecting cases).

### a. Analysis

Maria's cited authorities are inapposite because the corporate bylaws here do not limit the alienability of shares—they merely outline the procedural requirements for the corporations to recognize a valid transfer.[12] Indeed, the bylaws expressly provide that transfers which do not follow

---

[12] The "transfer restrictions" at issue in Maria's cited cases limit *whom* corporate shares can be transferred to; they do not outline the procedural requirements for effectuating a valid transfer. *Lehtinen v. Drs. Lehtinen*, 99 Ohio St.3d 69, 73 (Ohio 2003) (statute prohibiting transfers to nonprofessional); *Witte v. Beverly Lakes Inv.*

the procedural requirements are nonetheless valid "as to the parties thereto." (SC's Bylaws 3; SCCL's Bylaws 2.) *See Castonguay v. Castonguay*, 306 N.W.2d 143, 146 (Minn. 1981) (holding that the "trial court's decree ordering transfer of the shares *from Mr. Castonguay to Mrs. Castonguay* is effective") (emphasis added). Maria's cited authorities do not hold that compliance with procedural requirements for corporate recognition of transfers (i.e., delivery of certificates and entering the transfer on the books) is unnecessary for transfers by operation of law. In fact, fulfillment of those procedural requirements is requested by the plaintiff and granted as the relief in one of Maria's cited cases. *Witte v. Beverly Lakes Inv. Co.*, 715 S.W.2d 286, 294–95 (Mo. Ct. App. 1986) (holding that plaintiff was entitled to declaration that corporation issue a certificate to her in her name and that the company books show her as the holder of the certificate). Because it is undisputed that Maria never presented herself for registration as a shareholder (*see* Conrad et al. Opp'n 4; Palacios Decl. 2) or secured a court order directing the corporations to recognize her as a shareholder,[13] it would be improper to recognize her as a shareholder as of the date of the FFCL in 2008 or any time before the initiation of this civil action. However, as stated above, the Court at this time finds Maria is entitled to declaratory and

---

*Co.*, 715 S.W.2d 286, 289 (Mo. Ct. App. 1986) (articles of association prohibiting transfers to nonmembers of social club); *Castonguay v. Castonguay*, 306 N.W.2d 143, 144 (Minn. 1981) (articles of incorporation prohibiting transfers without first offering shares to corporation); *Bryan-Barber Realty, Inc. v. Fryar*, 120 N.C.App. 178, 181 (N.C. Ct. App. 1995) (shareholder agreement requiring written consent of shareholders for transfer); *In re Marriage of Devick*, 315 Ill.App.3d 908, 918–19 (Ill. App. Ct. 2000) (affiliate agreement providing corporation with right to impose restrictive legend on shares).

[13] *See e.g.*, *Earthman*, 526 S.W.2d at 196–97 (court of domestic relations initially entered divorce decree ordering husband to transfer shares, and upon motions for contempt, corporate certificates and assignments were tendered into registry of court pursuant to order of the court).

injunctive relief against SC and SCCL for the corporations to formally recognize her as a shareholder henceforward based on the FFCL.

**B. Summary Judgment on Maria's Conversion Claim Against Conrad Is Inappropriate.**

In the FAC's second cause of action, Maria alleges that "[b]y retaining record ownership of the stock in the Defendant Corporations that was distributed to Plaintiff by the . . . [FFCL], and obtaining the profits and other benefits deriving from ownership of that stock, Defendant Conrad Sablan has taken Plaintiff's property, and wrongfully converted it to his own use." (FAC 5.) The FAC also alleges punitive damages based on Conrad's conduct. (*Id.* at 6.)

Maria moves for summary judgment on this cause of action, but does not make any arguments specific to Conrad's liability for conversion. Instead, Maria combines her arguments against Conrad and Sablan Enterprises for the second through sixth causes to actions,[14] ultimately arguing that as a holder of 750 shares of Sablan Enterprises, she is entitled to "damages and/or restitution" of $63,300.00 "on her claims against Sablan Enterprises and Conrad." (Maria's MSJ and MJP 3–4.) Further, Maria argues that she is entitled to punitive damages from Sablan Enterprises and Conrad based on their conduct in the amount of $513,375.00. (*Id.* at 4–8.) In opposition, Conrad argues that Maria has not established that Sablan Enterprises recognizes her as a shareholder, challenges Maria's damages/restitution calculation because Conrad never received the cash alleged, and argues that punitive damages are inappropriate because he has not acted with "evil motive" or "reckless

---

[14] Maria's arguments against Sablan Enterprises have since been withdrawn due to the parties' settlement agreement. (Not. of Settlement 1.)

indifference." (Conrad et al. Opp'n 4–7.) In reply, Maria maintains that her calculation of damages/restitution is correct because while Conrad did not receive all his dividends in cash, he received land of equivalent value. (Maria's Reply 5–6.) Lastly, Maria argues that Conrad's "personal animosity" supports her claim for punitive damages. (*Id.* at 6–7.)

### 1. Legal Standard

The Restatement defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." Restatement (Second) of Torts § 222A (1965).[15] "Although a share of stock is intangible property, the Restatement provides that a share certificate, and the intangible rights it represents, can be the subject of a conversion." 11 Fletcher Cyclopedia of the Law of Corporations § 5114 (updated 2025) (citing *id.* § 242).

> Courts consider the following factors in determining whether a conversion as taken place: the duration or extent of the defendant's dominion or control over the shares; whether the owner demanded that the shares be turned over; the actor's intent to assert a right in fact inconsistent with the other's right of control; the actor's good faith; the extent and duration of the resulting interference with the other's right of control; whether the shares were sold; and the inconvenience and expense caused to the owner.

*Id.* (collecting cases). "In general, the conversion dates from the time when the shareholder, being entitled to the immediate possession of the shares or of the certificate, makes a demand for it that is refused." *Id.* (collecting cases). However, "no demand is necessary where the taking of possession and

---

[15] As noted above, by Commonwealth statute, "the rules of the common law, as expressed in the restatements of the law approved by the American Law Institute . . . shall be the rules of decision in the courts of the Commonwealth, in the absence of written law or local customary law to the contrary . . . ." 7 CMC § 3401.

conversion is wrongful, since the wrongful taking and converting is in itself an assertion of ownership." *Id.* (collecting cases). "But where an actual conversion is not proven, a demand and refusal made at a time when the defendant had the power to give up the shares must be shown." *Id.* (collecting cases).

### 2. Analysis

The Court denies Maria's Motion for Summary Judgment on this cause of action for conversion against Conrad. Maria's sole argument is that Conrad's retention of record ownership over the corporate shares that the FFCL declared as her interest amounted to conversion. Although the FFCL established Maria's equitable ownership interest in the corporate shares, *see* 12 Fletcher Cyclopedia of the Law of Corporations § 5497 (updated 2025) ("unregistered transfer passes equitable title as between the transferor and transferee"); *Milstead v. Bradshaw*, 43 Va. Cir. 428, 1997 WL 33616661, at * 3 (Va. Cir. Ct. 1997) (final divorce decree transferred "an equitable ownership interest"), Conrad's continued retention of record ownership did not deprive Maria of her "dominion" over the shares absent evidence that she made a demand to Conrad for the share certificates which he refused. *See Eureka Cnty. Bank v. Clarke*, 130 F. 325, 326–28 (9th Cir. 1904) (affirming that defendant's actions amounted to conversion, depriving her of dominion over shares, after plaintiff demanded delivery of stock and payment of dividends and defendant refused). Maria has not presented any evidence of a demand and subsequent refusal, nor any evidence at all as to the possession of the share certificates at issue. Accordingly, the Court denies Maria's Motion for Summary Judgment, and this cause of action for conversion may proceed to trial.

### C. The Court Grants Maria Summary Judgment on her Unjust Enrichment Claim Against Conrad as to Liability Only.

In the FAC's sixth cause of action, Maria alleges that "[b]y retaining record ownership of the stock and obtaining the profits and other benefits deriving from ownership of the stock in Defendant Corporations, Defendant Conrad Sablan has unjustly enriched himself at Plaintiff's expense, entitling Plaintiff to restitution." (FAC 8.) Maria does not allege punitive damages in relation to this unjust enrichment cause of action. (*See id.* at 7–9.) Similarly to Maria's summary judgment arguments with respect to the conversion cause of action, Maria moves for summary judgment on this unjust enrichment cause of action but does not make any arguments specific to Conrad's liability for unjust enrichment. (*See* Maria's MSJ and MJP 2.) The parties' briefing on this issue is identical to that for the conversion cause of action, outlined *supra* § III.B.

#### 1. Legal Standard

To state a claim for unjust enrichment under Commonwealth law, the claimant must show:

> (1) the defendant was enriched; (2) the enrichment came at the plaintiff's expense; and (3) equity and good conscience militate against permitting the defendant to retain what the plaintiff seeks to recover.

*Syed v. Mobil Oil Mariana Islands, Inc.*, 2012 MP 20 ¶ 41 (citing Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011)).

"While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." Restatement (Third) of Restitution and Unjust Enrichment § 1

17

cmt.a (2011). "The usual consequence of a liability in restitution is that the defendant must restore the benefit in question or its traceable product, or else pay money in the amount necessary to eliminate unjust enrichment." *Id.*

### 2. Analysis

The Court grants Maria summary judgment on her unjust enrichment claim against Conrad as to liability. As stated above, the FFCL established Maria's equitable ownership interest in the corporate shares. *Supra* § III.B.2. Despite Maria's equitable title to shares, Maria never received any dividend payments from Sablan Enterprises; Conrad did, as the registered owner of the shares that Maria held an equitable interest in. (Maria's MSJ and MJP 2–3; Gregory Ledger 2, ECF No. 64-1; Conrad Dep. 4, ECF No. 64-3; Corp. Reso. 2, ECF No. 64-4.)

However, genuine issues of material facts exist as to how much Conrad was unjustly enriched. Maria calculates restitution to be $63,300.00—the total value of dividends she was entitled to as a shareholder of 750 shares in Sablan Enterprises. (Maria's MSJ and MJP 3–4.) Her calculation is based on the $844,000 in value paid to all shareholders of record—$211,000 to the four individuals—in 2018 and 2019. (*Id.* at 3.) Aside from an initial $25,000 cash payment to Conrad on June 15, 2018 (Gregory Ledger 2), Conrad received subsequent dividends in the form of property transferred by Sablan Enterprises—the As Lito site—rather than as cash. (Conrad Dep. 4.) Maria's ultimate restitution calculation is premised upon the fact that on top of $25,000 in cash, Conrad received $186,000 value in the form of property from SE's dividends. However, the record shows that Conrad was only credited $135,500 towards his $200,000 purchase of the As Lito property as a dividend payment, not $186,000. (Corp. Reso. 2.) Thus, Maria's calculated total value of dividends is not sufficiently supported by

undisputed facts. Further, it is unclear to what extent Maria seeks additional sums from Conrad based on his profit from the sale of the V.S. Sablan Building. (*See* Maria's MSJ and MJP 6–8.) The question of the appropriate amount of restitution will proceed to trial.

### D. The Court Denies Maria's Motion for Judgment on the Pleadings as to Conrad's Unjust Enrichment Counterclaim.

Conrad's counterclaim alleges that Maria, by failing to pay . . . her just share of the marital debt in the amount of $214,005.45 as found by AJ Govendo, has unjustly enriched herself at [his] expense," warranting an award of restitution to Conrad by Maria. (Conrad's Answer 6.) Maria moves for judgment on the pleadings on Conrad's counterclaim because he has failed to plead any facts demonstrating that Maria's enrichment came at his expense—one of the elements of an unjust enrichment claim under CNMI law. (Maria's MSJ and MJP 8–9.) Maria argues that "[e]ven if Maria has paid none of her share of the debts," Conrad fails to state a claim for unjust enrichment because he "makes no allegation that he was forced to pay any more than his own share . . . ." (*Id.* at 9.) In opposition, Conrad asserts that he has "more than alleged a claim for unjust enrichment against the Plaintiff in this case" because he has stated the amount of his claim. (Conrad et al. Opp'n 9–10.) In reply, Maria maintains that Conrad has failed to state a claim because there is no allegation that Conrad incurred damages. (Maria's Reply 8.)

#### 1. Legal Standard

The legal standard for an unjust enrichment claim under Commonwealth law is articulated *supra* § III.C.1.

#### 2. Analysis

The Court denies Maria's Motion for Judgment on the Pleadings as to Conrad's counterclaim for unjust enrichment. First, contrary to Maria's assertions (*see* Maria's MSJ and MJP 9), Conrad has adequately pled that that Maria "unjustly enriched herself *at Counterclaim Plaintiff's expense*[.]" . (Conrad's Answer 6 (emphasis added).) Just as Maria's unjust enrichment claim—asserting that "Defendant Conrad Sablan has unjustly enriched himself at Plaintiff's expense, entitling Plaintiff to restitution" (FAC ¶ 45)—can stand on the pleadings, so too can Conrad's similar claim, which asserts that Maria "has failed and continues to fail to make any payments toward her share of the $214,005.45 in marital debts" as ordered in the FFCL. (Conrad's Answer, ¶¶ 7–9.) Further, Conrad is not required to prove at this stage that "he was forced to pay more than his own share" as a matter of law. (*See* Maria's MSP and MJP 9.) "While the paradigm case of unjust enrichment is one in which the benefit on one side of the transaction corresponds to an observable loss on the other, the consecrated formula 'at the expense of another' can also mean 'in violation of the other's legally protected rights,' without the need to show that the claimant has suffered a loss." Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt.a (2011). Thus, Conrad can succeed on his unjust enrichment claim by demonstrating that Maria violated his legal rights, as protected by the FFCL. For these reasons, Maria's motion for judgment on the pleadings as to Conrad's counterclaim for unjust enrichment fails and must therefore be denied.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Maria's Motion for Summary Judgment on her first cause of action for recognition as a shareholder against the remaining Defendant Corporations and her sixth cause of action for unjust enrichment against Conrad as to liability only. The calculation

of restitution remains an issue for trial. The Court DENIES Maria's Motion for Summary Judgment on her second cause of action for conversion against Conrad and her Motion for Judgment on the Pleadings as to Conrad's Counterclaim for unjust enrichment. Those claims may also proceed to trial.

IT IS SO ORDERED this 27th day of October, 2025.

RAMONA V. MANGLONA
Chief Judge